IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS

FAYETTEVILLE DIVISION

TAMMY SUE YOUNKINS                                         PLAINTIFF

V.                                        NO. 15-5138

CAROLYN W. COLVIN,

Acting Commissioner of the Social Security Administration          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Tammy Sue Younkins,  brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

I.     **Procedural Background:**

Plaintiff protectively filed her application for SSI on July 3, 2012, alleging disability since February 1, 2012, due to brain damage, learning disabilities, thyroid disease, Grave's disease, sleep apnea, migraines, light headedness, dizziness, depression, and choking when eating or drinking. (Doc. 11, pp. 199-205, 221, 225). An administrative hearing was held on May 30, 2013, at which Plaintiff appeared with counsel and testified. (Doc. 11, pp. 30-73).

By written decision dated January 30, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – hypothyroidism, obesity, borderline intellectual functioning and dysthymic disorder. (Doc.

1

11, p. 14). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 11, p. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 416.967(a) except that she can perform simple, routine and repetitive tasks in an environment where interpersonal contact is incidental to the work performed. She can respond to supervision that is simple, direct and concrete.

(Doc. 11, p. 19). With the help of a vocational expert (VE), the ALJ determined that Plaintiff would be able to perform jobs such as addressing clerk, dowel inspector, and compact assembler. (Doc. 11, p. 22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on May 29, 2015. (Doc. 9, pp. 5-7). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 9, 10).

## II.    Evidence Presented:

Some of the medical records contained in the transcript, which the undersigned has reviewed, are dated prior to the relevant time period. In 2008, Plaintiff presented to the LSU Health Sciences Center, complaining of weakness, and indicated she had not had her thyroid medication for approximately three months. (Doc. 11, p. 317). Plaintiff was diagnosed with hypothyroidism. (Doc. 11, p. 318). On May 25, 2010, Plaintiff saw Dr. John Gaston at Simply Family Medicine. (Doc. 11, p. 332). Plaintiff indicated to Dr. Gaston that she had tried to get in to the Free Clinic in Fayetteville, but they recommended she see Dr. Gaston. (Doc. 11, p. 332). Dr. Gaston reported at that time that Plaintiff smoked about ½ packs of

cigarettes per day. (Doc. 11, p. 332). Dr. Gaston found Plaintiff's history to be very confusing, and believed her hypothyroidism was over-controlled, recommended she stop taking the medication completely for six weeks, and then recheck her TSH. (Doc. 11, p. 332). Dr. Gaston did not believe he could prescribe thyroid medication at that time, with only one lab value. On July 7, 2010, Dr. Gaston reported that he called Plaintiff due to her TSH being extremely high, concluding that she had severe hypothyroidism, and indicated her thyroid problems should be managed by an endocrinologist. (Doc. 11, p. 335).

Almost two years later, on May 1, 2012, Plaintiff presented to Mediserve-Walk in Clinic, seeking medication refills, and indicated she had taken her last thyroid pill the previous Thursday. (Doc. 11, p. 338).

On May 7, 2012, Plaintiff presented to the emergency room at Washington Regional Medical Center (WRMC), for evaluation of abdominal pain. (Doc. 11, p. 352). It was then reported that Plaintiff smoked one pack of cigarettes per day, and she denied arthralgias and myalgias. (Doc. 11, pp. 352-353). Plaintiff was diagnosed with abdominal pain. (Doc. 11, p. 354). On May 26, 2012, Plaintiff presented to WRMC for evaluation of migraine headaches. (Doc. 11, p. 344). At that time, her upper extremity exam included normal findings of inspection, range of motion was normal, and radial pulse was normal. Her lower extremity exam included normal findings of inspection, range of motion was normal, and Homan's test was negative. (Doc. 11, p. 345). Plaintiff was diagnosed with a migraine headache. (Doc. 11, p. 345).

On June 28, 2012, Plaintiff saw Dr. Lawrence Schemel as a new patient, seeking refills of her medications. (Doc. 11, p. 360). At that time, Plaintiff reported smoking 1 ½

packs of cigarettes per day. (Doc. 11, p. 360). She reported that she had been out of medicine for about a week, and that she was referred to an endocrinologist, Dr. Alex, a few months previously. (Doc. 11, p. 360). She also reported that she received medical treatment through emergency rooms. (Doc. 11, p. 360). Plaintiff further reported that, although she was supposed to be using a CPAP machine because she had been diagnosed with sleep apnea, she was unable to afford to have her broken CPAP mask fixed. (Doc. 11, p. 360). Dr. Schemel refilled Plaintiff's thyroid medication and reported that she needed to take it consistently for six weeks prior to a blood level test. He diagnosed her with hypothyroidism, currently off medications, recurrent headaches, and obesity. (Doc. 11, p. 366). Dr. Schemel also prescribed Depakote for Plaintiff for anxiety and panic attacks on July 2, 2012. (Doc. 11, p. 292).

On August 13, 2012, Plaintiff underwent a Mental Diagnostic Evaluation and Intellectual Assessment by Scott McCarty, Ph.D., of Mindworks. (Doc. 11, p. 373). Plaintiff denied prior inpatient treatment and outpatient counseling. (Doc. 11, p. 373). Dr. McCarty indicated that Plaintiff reported uncharacteristic learning problems, including slow learning and difficulty comprehending tasks, which she stated had occurred since she fell and hit her head at the age of five. (Doc. 11, p. 373). Plaintiff also reported she continued to experience headaches. Dr. McCarty noted that Plaintiff walked with a cane and moved slowly. (Doc. 11, p. 374). Upon evaluation, Dr. McCarty reported that Plaintiff's individual education history was consistent with a diagnosis of mental retardation, only in the sense of special education classes, but the classes seemed only necessary subsequent to her traumatic head injury at the age of five. (Doc. 11, p. 374). He also reported that the deficits in adaptive functioning were not consistent with mental retardation. (Doc. 11, p. 374). Dr. McCarty recommended a neuropsychological evaluation to determine the impact of Plaintiff's traumatic head injury

upon her cognitive functioning. He also found she appeared to qualify more for borderline intellectual functioning rather than mental retardation, given her full scale IQ of 71 and her lack of at least two limitations in adaptive functioning that would be consistent with mental retardation. (Doc. 11, p. 375). Dr. McCarty diagnosed Plaintiff as follows:

| | | |
|---|---|---|
| Axis I: | Dysthymic Disorder | |
| | R/o Cognitive Disorder NOS via an NPE | |
| Axis II: | Borderline Intellectual Functioning | |
| Axis V: | GAF – 51-61 | |

(Doc. 11, p. 375). Dr. McCarty noted that Plaintiff indicated she could dress, bathe, cook, drive, shop independently, use a checkbook, make change, and count money. (Doc. 11, p. 375). He also found Plaintiff appeared capable of interacting in a socially adequate manner and responding appropriately to supervisors and coworkers; her issues would present mild to moderate limitations in her coping capacity for the typical mental/cognitive demands of basic work-like tasks; she appeared capable of understanding, remembering, and carrying out instructions; she evidenced excellent concentration and attention on Digit Span, which suggested sufficient ability to attend and sustain concentration on basic tasks; she possessed sufficient capacity to persist at tasks until completion; her issues would present mild to moderate limitations in her capacity to complete work-like tasks within an acceptable timeframe and to respond appropriately to work pressure; and she did not evidence limitations in at least two areas of adaptive functioning that would seem consistent with mental retardation. (Doc. 11, pp. 375-376).

On August 15, 2012, non-examining consultant, Dr. Alice M. Davidson, completed a Case Analysis, finding that Plaintiff's physical impairments were not severe. (Doc. 11, p.

101). Also on August 15, 2012, non-examining consultant, Brad F. Williams, Ph.D., completed a Psychiatric Review Technique report, finding Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation, each of extended duration. (Doc. 11, p. 102). Dr. Williams also completed a Mental RFC Assessment, wherein he concluded that Plaintiff was moderately limited in her ability to understand and remember detailed instructions; markedly limited in her ability to carry out detailed instructions; markedly limited in her ability to maintain attention and concentration for extended periods; moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; moderately limited in her ability to sustain an ordinary routine without special supervision; moderately limited in her ability to make simple work-related decisions; moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors; and moderately limited in her ability to set realistic goals or make plans independently of others. (Doc. 11, pp. 104-105). Dr. Williams concluded that Plaintiff's current activities of daily living appeared inconsistent with borderline intellectual functioning and overall fairly good functioning, and that Plaintiff would seem capable of unskilled work. (Doc. 11, p. 105). He found Plaintiff would be able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work, where complexity of tasks was learned and performed by rote, with few variables, little judgment, and where supervision required was simple, direct and concrete. (Doc. 11, p. 105).

On November 6, 2012, non-examining consultant, Cheryl Woodson-Johnson, completed a Psychiatric Review Technique report, wherein she found Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation, each of extended duration. (Doc. 11, p. 118). Ms. Woodson-Johnson also completed a Mental RFC Assessment, wherein she found Plaintiff was markedly limited in her ability to carry out detailed instructions, markedly limited in her ability to maintain attention and concentration for extended periods, and that Plaintiff could perform unskilled work. (Doc. 11, pp. 119-120, 122).

On February 13, 2013, Plaintiff presented herself to WRMC for evaluation of anxiety and a migraine headache. (Doc. 11, p. 391). At that time, she reported smoking 1 ½ packs of cigarettes per day. (Doc. 11, p. 391). Plaintiff was diagnosed with a panic attack, acute stress reaction, anxiety, and migraine headache. (Doc. 11, p. 393).

On August 15, 2013, Richard D. Back, Ph.D., conducted a Mental Diagnostic & Neuropsychological Evaluation of Plaintiff. (Doc. 11, p. 406). At the evaluation, Plaintiff claimed that Depakote was helpful. (Doc. 11, p. 407). Dr. Back reported that there were indications of pain, including walking with a cane and sighing. (Doc. 11, p. 409). He reported that Plaintiff had a full scale IQ of 67, and opined that Plaintiff was currently functioning in the mild range of mental retardation, but was functioning in the borderline range of mental retardation on Verbal Comprehension, and in the mild range of mental retardation on Perceptual Reasoning. (Doc. 9, pp. 409-410). Dr. Back diagnosed Plaintiff as follows:

Axis I:        Somatization Disorder

               Generalized Anxiety Disorder

> Axis II:          Mild Mental Retardation
>
> Axis v:          45-55

(Doc. 11, pp. 412-413). Dr. Back found Plaintiff was markedly impaired or severely impaired in several categories. (Doc. 11, pp. 413-416).

On August 20, 2013, Dr. Robert Karas performed a General Physical Examination of Plaintiff. (Doc. 11, p. 398). He found Plaintiff had normal range of motion in her extremities; her lumbar spine flexion was at 90 degrees and was painful; and Plaintiff was able to perform all limb functions, except she could not stand/walk without the use of the cane. (Doc. 11, pp.401-402). Dr. Karas diagnosed Plaintiff with obesity, hypothyroidism, sleep apnea, and depression, and found she had mild to moderate limitations with walking/carrying, and lifting. (Doc. 11, pp. 402-403).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents

8

the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. § 416.920  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. § 416.920,  abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920.

**IV.    Discussion::**

  **A.  Credibility Analysis:**

Plaintiff argues that the ALJ erred in his credibility determination by considering Plaintiff's non-compliance and failure to pursue medical treatment. Plaintiff asserts that she sought medical care as much as she could, and that she had no money or insurance to pay for medical care.

The ALJ may properly discount subjective complaints based on a failure to pursue regular treatment. See Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003)(ALJ may discount subjective complaints based on a failure to pursue regular medical treatment). In this case, the record shows that Plaintiff often ran out of her prescribed thyroid medication and did not follow up with her physicians as ordered. For example, Plaintiff had not sought medical care for almost two years when she went to a walk-in clinic in May of 2012 for unrelated complaints and refill of another medication. (Doc. 11, pp. 20, 337-338). See Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012)(claimant's allegations of disability discredited by lack of treatment for certain symptoms and for certain periods of time); Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007)(a claimant's allegations of disabling pain may be discredited by evidence they have received minimal medical treatment and/or has taken only occasional pain medications).

Plaintiff argues that the reason she did not seek medical care was because she had no money or insurance. However, her financial status and real motivations for the absence of regular treatment are questions of fact for the ALJ to decide. See Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987). Nothing in the record in this case indicates that Plaintiff ever attempted to seek mental health treatment or obtain medication refills and timely follow-up

for her thyroid problems, but was denied treatment due to insufficient funds or lack of insurance. See Osborne v. Barnhart, 316 F.3d 809, 812 (8th Cir. 2003(although claimant's lack of insurance is reason for not pursuing mental health treatment, there is no evidence she attempted to obtain treatment and was denied treatment because of insufficient funds or insurance). Further, Plaintiff only alleged financial difficulty to medical providers as the reason she could not have her sleep apnea machine repaired. (Doc. 11, pp. 365, 378, 382).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

**B.  RFC Determination:**

Plaintiff argues that the ALJ "is not free to cherry pick through the medical records for the ones that happen to, as he thinks, support his ultimate findings." (Doc. 11, p. 11). More specifically, Plaintiff argues that the ALJ should have chosen to give more weight to the opinion of Dr. Back rather than Dr. McCarty, and that the ALJ failed to set forth specific reasons for disregarding Dr. Back's opinion.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported

11

by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

In his decision, the ALJ carefully and thoroughly discussed the opinions of Dr. Back and Dr. McCarty. (Doc. 11, pp. 15-18, 21-22). In fact, the ALJ recognized the disparities between Dr. Back's conclusion that Plaintiff was mildly mentally retarded and Dr. McCarty's conclusion that Plaintiff suffered from borderline intellectual functioning. (Doc. 11, pp. 17-18).

Plaintiff exhibited good grooming and hygiene when she was evaluated by Dr. McCarty on August 13, 2012, and admitted that she could independently dress, bathe, cook, drive, shop, and manage her finances. (Doc. 11, pp. 15, 375). Dr. McCarty's evaluation revealed that Plaintiff was calm and cooperative; had unremarkable speech; showed appropriate affect, but depressed mood; exhibited slow yet logical, relevant, organized, and goal-directed thought processes; and had no evidence of any perceptual or thought content abnormalities. (Doc. 11, p. 374). After finding that Plaintiff had a full scale IQ score of 71, Dr. McCarty concluded that Plaintiff could communicate in an intelligible, effective, and socially adequate manner; had mild to moderate limitations in her capacity to handle basic-work like tasks, but appeared capable of understanding, remembering, and carrying out basic instructions; had excellent concentration and attention on digital span; could sustain

attention, concentration, and persistence on basic work like tasks; had mild to moderate limitations in her capacity to complete basic work-like tasks in an acceptable time frame and in her capacity to respond appropriately to work pressure. (Doc. 11, pp. 374-376)

When Plaintiff saw Dr. Back on August 15, 2013, Plaintiff made inconsistent reports of her daily living activities, and claimed that while she could perform some household chores, cook "just about anything" by following recipes, and handle her personal finances, she had trouble shopping independently and driving unfamiliar routes. (Doc. 11, pp. 407-408). Dr. Back assessed a full IQ score of 67 and diagnosed Plaintiff with mild mental retardation. (Doc. 11, pp. 411-413). He also found that Plaintiff's mental impairments interfered with her day to day adaptive functioning to a marked extent, and that her capacity to communicate and interact in a socially adequate manner was markedly impaired. (Doc. 11, p. 413). Dr. Back noted that his assessment of limitations in social functioning and concentrations were in part based on Plaintiff's subjective complaints. (Doc. 11, p. 413).

The undersigned believes the ALJ properly evaluated the opinions of Dr. McCarty and Dr. Back, and correctly noted that Dr. McCarty's opinion was more consistent with the record and thus deserving of greater weight. See Tindell v. Barnhart, 444 F.3d 1002, 1005 (8th Cir. 2006)(ALJ provided specific reasons for giving differing weight to conflicting evidence, and he was within his authority in resolving the conflicting opinions); see also Cox v. Astrue, 495 F.3d 614, 618619 (8th Cir. 2007)(the ALJ properly discounted IQ scores in mentally retarded range, particularly in light of activities the claimant acknowledged); Chunn v. Barnhart, 397 F.3d 667, 671 (8th Cir. 2005)(an ALJ may reject IQ scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based on a one time examination by a nontreating psychologist). Accordingly, the

13

undersigned believes the ALJ acted within his discretion when he evaluated the opinion evidence and found that the record supported a severe impairment of borderline intellectual functioning and a RFC to perform a modified range of sedentary, unskilled work.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination and weight given to the opinions.

### C. Hypothetical Question to VE:

Plaintiff argues that the ALJ failed to form proper hypotheticals to the VE, and that the VE's testimony was incompetent because the reading and math levels of the jobs the VE found Plaintiff could perform were above Plaintiff's mental RFC.

The ALJ is required to include only those impairments which are substantially supported by the record as a whole and accepted as true by the ALJ. Stormo v. Barnhart, 277 F.3d 801, 808-809 (8th Cir. 2001); See Gragg v. Astrue, 615 F.3d 932, 940 (8th Cir. 2010)(ALJ's hypothetical question incorporated the limitations that the ALJ found to be credible and excluded those limitations that were discredited or were not supported by the evidence presented).

There is no evidence indicating that the ALJ limited Plaintiff's ability to perform reading and math tasks or that the jobs the VE found Plaintiff could perform conflicted with Plaintiff's RFC. The VE testified that all of the jobs were unskilled with a specific vocational profile (SVP) of 2. See Husley v. Astrue, 622 F.3d 917, 925 (8th Cir. 2010)(a job with a SVP of 1 or 2 corresponds to an unskilled job).

Based upon the foregoing, the Court finds that the ALJ presented a proper hypothetical question to the VE, and that substantial evidence supports the ALJ's finding that

14

Plaintiff would be able to perform the jobs of addressing clerk, dowel inspector, and compact assembler.

**V.     Conclusion:**

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 14th day of October, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

15